[No. 26900. Department Two. June 6, 1938.]

WALTER T. WEBB, *Appellant,* v. OREGON-WASHINGTON RAILROAD & NAVIGATION COMPANY, *Respondent.*[1]

[1]Reported in 80 P. (2d) 409.

*John H. Roche* and *Joseph F. Morton,* for appellant.

*A. C. Spencer* and *Hamblen, Gilbert & Brooke,* for respondent.

ROBINSON, J.—Appellant brought this action against respondent railroad company to recover damages for injuries to person and property sustained by him when he drove his automobile into the side of a freight train left standing on a street crossing in the city of Spokane. The case was tried before a court and jury. At the close of appellant's case, respondent moved the court for an order dismissing appellant's action, and this motion was granted. Appellant's motion for a new trial having been overruled, the court entered judgment of dismissal. From this judgment, appellant appeals, assigning as error the granting of the motion to dismiss, the denial of appellant's motion for new trial, and the entry of the judgment of dismissal.

The question on this appeal is whether or not the trial court was correct in ruling that the evidence introduced by appellant failed to establish liability on respondent's part. The basic questions are: Was respondent negligent? and, If respondent was negligent, was appellant guilty of contributory negligence? Taken in the light most favorable to appellant, the facts are as follows: Helena street in Spokane is an (apparently) unpaved street seventy-five feet wide running north and south. It is intersected at right angles by Broadway and Springfield avenues. These two intersections are about four hundred feet apart. At a point about midway between Broadway and Springfield, respondent's railroad tracks cross Helena street at a slight angle. There are three tracks—a main line flanked by side tracks. Proceeding south on Helena, one leaves Broadway and comes down a three and one-half per cent grade to the tracks. The

tracks are on a level. From the tracks one goes up a somewhat easier grade to Springfield avenue. Thus, the tracks are in a small draw or valley. There are street arc lights at the Broadway and Springfield intersections, but the grade crossing in the middle of the block is not lighted.

On the night in question, February 7, 1936, respondent was engaged in its usual switching operations upon its tracks. In the course of these operations, a train of unlighted box cars was left standing upon the main line (the middle track), completely blocking the Helena street crossing, while the locomotive was engaged in other business. The time was about 7:30 p. m. The night was dark and very cold, but the air was clear.

The cars had been standing on the crossing for about seven minutes when appellant came along in his 1935 Ford coupe. He had not been in this neighborhood for two years and was not aware of the grade crossing. With him in the automobile was his nephew. Because of the cold, they had the windows closed, and the moisture from their breaths congealed on the windows and windshield. About every four blocks, appellant would wipe this fog or frost from the windshield. Appellant was driving with his headlights shining down in the "dim" or "passing" position. He understood that this is customary while driving in a town or city. With his lights so adjusted, he could see only twenty-five feet ahead on a level road. His brakes were "perfect."

Appellant was proceeding south on Helena street. About a block north of Broadway he cleaned his windshield. He drove across Broadway and down the grade toward the tracks at eighteen or twenty miles per hour. The street light on Springfield shone in his eyes. About twenty-five feet from the bottom of the grade, the

street light disappeared. That this was unusual did not occur to him; he was concentrating on the road within the twenty-five foot range of his lights. As the box cars were on the level at the bottom of the slope, his lights did not hit them until his car had levelled out on the grade crossing, and it was then too late to avoid the collision.

Appellant contends that respondent was negligent in leaving the train standing across, and completely blocking, Helena street on a dark night, in not placing a light. or a watchman on the cars ·or at the crossing, and in violating an 1891 city ordinance making it a misdemeanor for any employee or agent of a railroad company to obstruct a street for more than five minutes.

In *Reines v. Chicago, M., St. P. & P. R. Co.,* *ante* p. 146, 80 P. (2d) 406, we very recently examined, at some length, the rule laid down in *Ullrich v. Columbia & Cowlitz R. Co.,* 189 Wash. 668, 66 P. (2d) 853, to the effect that:

"When a train actually occupies the crossing, that in itself supersedes all other warnings and gives actual notice by its own presence."

We concluded in the *Reines* case, citing many authorities which may be found in the opinion, that the rule was sustained by the great weight of authority, and especially by the great weight of recent authority. That case is determinative of the first contention made by the appellant that the railway was negligent in not installing a light at the crossing or maintaining a watchman there.

In that case, we also incidentally made reference to, and cited, a number of cases holding that a railroad company is negligent *per se* when it permits a train to occupy a crossing for a length of time forbidden by law or ordinance, and that one who drives

into a train which has been permitted to do so may recover for his resulting damage. This rule, however, does not appeal to us as sound and is not supported by the weight of authority.

Passing over the fact that, in this case, the ordinance does not set up a standard of conduct for the railroad itself, but is merely a penal one applying only to railroad employees, we are convinced that the fact that the train remained two minutes longer than the time permitted by the ordinance must be regarded as merely a condition of the accident, not a cause thereof. The same result would have happened had the appellant reached the crossing three minutes earlier. The thought is expressed in the case of *Hendley v. Chicago & N. W. R. Co.*, 198 Wis. 569, 225 N. W. 205, as follows:

"We see no causal connection between the alleged violation of this provision and the injury to the plaintiff upon which could be predicated a liability of the defendant railroad company. It is clear that it was not because of the standing of the train the extra five minutes beyond the statutory ten minutes that could make the railroad company responsible. The same result would have followed had this crossing been approached by plaintiff seven minutes earlier. The lapse of time therefore went no further than to create the condition in which the accident occurred as distinguished from the cause thereof."

In *Jones v. Atchison, T. & S. F. R. Co.*, 129 Kan. 314, 282 Pac. 593, the court said:

"The statute is one to facilitate the movement of traffic on the highway and to prevent blockade causing congestion and delay. The statute was not one to prevent autotruck drivers from running against the sides of freight trains."

See, also, *Orton v. Pennsylvania R. Co.*, 7 F. (2d) 36; *Pennsylvania R. Co. v. Huss*, 96 Ind. App. 71, 180 N. E. 919; *Simpson v. Pere Marquette R. Co.*, 276 Mich. 653,

268 N. W. 769; *Missouri K. T. R. Co. v. McLain,* 105 S. W. (2d) (Tex. Com. App.) 206; *Jones v. Texas & P. R. Co.,* 154 So. (La. App.) 768; and American Law Institute Restatement of Torts, § 286.

In our opinion, the trial court rightly dismissed the cause at the close of plaintiff's evidence on the ground that no negligence on the part of the railroad company had been shown. It is, therefore, unnecessary for us to consider the question as to plaintiff's negligence.

The judgment appealed from is affirmed.

STEINERT, C. J., BEALS, MILLARD, and BLAKE, JJ., concur.

[1] Reported in 80 P. (2d) 403.