PRIDE

v.

CLEVELAND STATE UNIVERSITY.

Court of Claims of Ohio.

No. 94–06792.

Decided Sept. 8, 1995.

46

*Donna Taylor–Kolis,* for plaintiff.

*Betty D. Montgomery,* Attorney General, and *Larry Y. Chan,* Assistant Attorney General, for defendant.

---

DEAN STRAUSBAUGH, Judge.

Plaintiff, Darryl Pride, filed a complaint against defendant, Cleveland State University ("CSU"), alleging that defendant is responsible for personal injuries he sustained after falling through an uncovered fresh air return ventilation shaft located behind Rhodes Tower on the CSU campus. Defendant denies any liability to plaintiff. The court held a bifurcated trial upon the sole issue of liability. Upon careful consideration of all the evidence, the court renders the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. In November 1993, plaintiff was not attending CSU as a student. He officially resided at 1500 East 193rd Street in Cleveland, Ohio;

2. Despite having a residence on East 193rd Street, plaintiff often sought refuge in a homeless shelter located near East 21st Street and Payne Avenue in Cleveland, Ohio. Periodically, plaintiff was denied access when the shelter was at full capacity;

3. Sometimes, during cold weather when the homeless shelter was full, plaintiff chose to sleep on the metal grates that covered the fresh air return

ventilation shafts attached to some of the CSU buildings because warm air circulates up through these ventilation shafts;

4. On November 17, 1992, CSU police officers discovered plaintiff sleeping on the grates covering the ventilation shaft located behind Rhodes Tower. The officers gave him a trespass warning and instructed him to stay off the grate;

5. On September 19, 1993, CSU police officers discovered plaintiff sleeping on grates covering a ventilation shaft located at Stillwell Hall on the CSU campus. The officers again warned him to stay off such grates;

6. During November 1993, plaintiff had a substance abuse problem with alcohol, cocaine, and marijuana;

7. On November 3, 1993, between 10:00 a.m. and 1:00 p.m., plaintiff consumed at least two forty-ounce bottles of beer for a total of approximately eighty ounces of beer;

8. On November 3, 1993, at approximately 10:40 p.m., plaintiff sustained personal injuries after he climbed over a raised brick wall, and fell into a ventilation shaft located behind the Rhodes Tower classroom building on the CSU campus. This is the same air ventilation shaft that officers ordered plaintiff to stay away from in November 1992;

9. CSU Police Officer Dwight C. Hall testified that when he arrived at the accident scene, plaintiff had slurred speech and otherwise appeared intoxicated. Plaintiff told Officer Hall that he had consumed one beer that evening, but did not specify the size of the beer. Plaintiff also informed Officer Hall that a friend had accompanied him that evening and had gone for help. There is no verification of that statement;

10. Although there is no lighting directly above the ventilation shaft behind Rhodes Tower, the area surrounding it is illuminated by at least three lights on Rhodes Tower itself and additional street lights on nearby Chester Avenue;

11. The shaft is ordinarily covered by several 3' × 15' metal grates weighing approximately two hundred and fifty pounds each;

12. The grating covering the ventilation shaft, and the area approaching and surrounding it, is not part of a dedicated walkway at CSU, nor is it a worn path of travel from pedestrian traffic at CSU;

13. On the evening in question, plaintiff chose to walk behind Rhodes Tower, to leave the sidewalk, and to step up and over a raised brick wall which surrounded the ventilation shaft, allegedly while en route to a friend's apartment on East 14th Street. By choosing to walk behind Rhodes Tower and attempting to walk over the air ventilation shaft, plaintiff elected to leave the well-lit

walkways which were dedicated and improved for pedestrian traffic and to travel well out of the way of the most direct route to his proposed destination;

14. Defendant officially inspected and observed the presence of the metal grating covering the ventilation shaft behind Rhodes Tower on October 26, 1993;

15. Defendant did not have notice of the missing metal grating that ordinarily covered the ventilation shaft behind Rhodes Tower until after plaintiff's accident on November 3, 1993;

16. Prior to November 3, 1993, defendant had notice that vandals sometimes stole much smaller metal fixtures particularly brass fittings, in order to sell such items for scrap value. However, the present case is the only instance of vandalism in which an object as large and as heavy as the missing steel grating in question has ever been removed;

17. Plaintiff claims that he is entitled to relief from defendant under the facts of the case as a result of the doctrine of "qualified nuisance."

## CONCLUSIONS OF LAW

1. In order to recover from defendant under the theory that it maintained a "qualified nuisance" on its property, plaintiff must first aver and prove negligence on defendant's part. See *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 441, 28 O.O. 369, 375, 55 N.E.2d 724, 731; *Rothfuss v. Hamilton Masonic Temple Co.* (1973), 34 Ohio St.2d 176, 180, 63 O.O.2d 270, 272, 297 N.E.2d 105, 109;

2. To prevail upon a claim of negligence, plaintiff must prove by a preponderance of the evidence that defendant owed him a duty, that defendant breached that duty, and that defendant's breach of duty proximately caused him injury. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467;

3. "In Ohio, the duty owed by a possessor of land to another on the land depends upon the other's status as either trespasser, licensee or invitee." *Patete v. Benko* (1986), 29 Ohio App.3d 325, 327, 29 OBR 452, 454–455, 505 N.E.2d 647, 650;

4. "A trespasser is one who enters the premises [of another] without right, lawful authority, or express or implied invitation or license." 76 Ohio Jurisprudence 3d (1987), Section 6. "[T]he standard of care owed by property owners to an undiscovered trespasser is only to refrain from injuring him by willful or wanton conduct." *Seeholzer v. Kellstone, Inc.* (1992), 80 Ohio App.3d 726, 730, 610 N.E.2d 594, 597, citing *Preston v. Baltimore & Ohio RR. Co.* (1988), 49 Ohio App.3d 70, 73–74, 550 N.E.2d 191, 194;

5. "[A] person who enters the premises of another by permission or acquiescence, for his own pleasure or benefit, and not by invitation, is a licensee." (Emphasis deleted.) *Provencher v. Ohio Dept. of Transp.* (1990), 49 Ohio St.3d 265, 266, 551 N.E.2d 1257, 1258. The standard of care owed by property owners to a licensee is to refrain only from wantonly or willfully causing injury. *Hannan v. Ehrlich* (1921), 102 Ohio St. 176, 131 N.E. 504, at paragraph four of the syllabus;

6. "[I]nvitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." *Light v. Ohio Univ.* (1986), 28 Ohio St.3d 66, 68, 502 N.E.2d 611, 613, citing *Scheibel v. Lipton* (1951), 156 Ohio St. 308, 46 O.O. 177, 102 N.E.2d 453. The owner of a premises must exercise ordinary care to protect an invitee from unsafe conditions. See, *e.g., Presley v. Norwood* (1973), 36 Ohio St.2d 29, 65 O.O.2d 129, 303 N.E.2d 81;

7. The court finds that plaintiff's presence on the CSU campus, specifically, as he attempted to enter the area of the ventilation shaft that he had been forbidden to enter on at least two prior occasions, afforded him the legal status only of a trespasser, which the court so finds. At the very most, plaintiff could have attained the legal status of a licensee when he attempted to enter the ventilation shaft for his own pleasure and benefit. In either circumstance, defendant's duty owed to plaintiff would be to warn of known hazardous conditions and refrain from wantonly or willfully causing him harm. Plaintiff has not made a charge of wanton or willful conduct on the part of defendant and there is no evidence in the record to support such a finding. In addition, defendant did not know of the hazardous condition on its premises until after plaintiff's accident. Consequently, defendant did not breach any duty owed to plaintiff;

8. Even if plaintiff was an invitee on the CSU campus at the time of his accident, the record does not support a finding that defendant breached a duty of ordinary and reasonable care. Defendant reasonably maintained and inspected the ventilation shaft in question with the most recent inspection occurring eight days prior to plaintiff's fall. Accordingly, the court finds that defendant had neither actual nor constructive notice of any unreasonably safe condition in the vicinity of the air ventilation shaft. Finally, plaintiff's own voluntary acts of attempting to enter the air ventilation shaft and failing to exercise some degree of care towards his own safety were the sole proximate cause of his injuries;

9. For any and all of the foregoing reasons, judgment shall be rendered in favor of defendant.

Upon careful consideration of all the evidence presented at trial, and for the reasons stated in the decision rendered concurrently herewith, judgment is rendered in favor of defendant, and against plaintiff, Darryl Pride. Court costs are assessed against plaintiff. The clerk is directed to serve notice of this judgment and its date of entry upon the journal to all parties.

*Judgment for defendant.*

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting by assignment.